## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| FIDUCIARY NETWORK, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| RAYMOND W. BUEHLER, JR., | § | Civil Action No. 3:15-cv-0808 |
| SCHNEIDER DOWNS WEALTH | § | |
| MANAGEMENT ADVISORS, LP, and | § | |
| SCHNEIDER DOWNS & CO., INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motion to Remand [Dkt. No. 7] and Plaintiff's

Motion for Leave to Conduct Jurisdictional Discovery [Dkt. No. 18].  For the reasons

discussed below, Plaintiff's Motion to Remand is **DENIED**, and Plaintiff's Motion for

Leave to Conduct Jurisdictional Discovery is **GRANTED**.  Because Defendants have

filed an Amended Motion to Dismiss for Lack of Personal Jurisdiction and Alternative

Motion to Transfer Venue [Dkt. No. 27], Defendant's original Motion to Dismiss for

Lack of Jurisdiction and Alternative Motion to Transfer Venue [Dkt. No. 5] is **DENIED**

as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 3, 2015, Plaintiff Fiduciary Network, LLC ("Plaintiff" or "Fiduciary")

filed suit against Defendants Raymond W. Buehler, Jr. ("Buehler"), Schneider Downs

Wealth Management Advisors, LP ("SDWM") and Schneider Downs & Co., Inc.

("Schneider Downs") in the 116th Judicial District Court of Dallas County, Texas,

1

alleging tortious interference with an existing contract.  Dkt. No. 1-1 (Pl.'s Original Pet.).

SDWM provides investment and wealth management advice, and Schneider Downs is a

certified public accounting firm.  Dkt. No. 17 ¶¶ 11–12 (Pl.'s Amended Complaint).

Both firms are headquartered in Pittsburgh, Pennsylvania.  *Id.*  Defendant Buehler is the

Chairman of Schneider Downs.  *Id.* ¶ 10.  Plaintiff seeks relief from SDWM for

knowingly interfering with an existing contract between Derek J. Eichelberger

("Eichelberger") and Gibson Capital LLC ("Gibson"), and alleges Schneider Downs and

Buehler acted in concert with SDWM.  *Id.* ¶¶ 2, 14.

Eichelberger was an investment advisor and junior partner at Gibson.  *Id.* ¶ 3. He

entered into a non-compete agreement with Gibson which, among other restrictions,

allegedly precluded him from working in an investment and wealth advisory capacity in

competition with Gibson, or soliciting Gibson's customers or recruiting its employees,

for two years after the end of his employment with Gibson.  *Id.*  Plaintiff is an investor in

Gibson and an alleged third-party beneficiary of the non-compete agreement between

Eichelberger and Gibson. Plaintiff filed suit in Texas upon learning that SDWM had

hired Eichelberger in breach of the non-compete agreement.  *Id.*  Plaintiff alleges that

SDWM initiated negotiations with Gibson and Plaintiff through Buehler to allow

Eichelberger to join SDWM and breach his non-compete obligations.  *Id.* ¶ 4.  Thus,

Plaintiff alleges that Schneider Downs acted in concert with SDWM to interfere with

Eichelberger's non-compete agreement with Gibson.  *Id.* ¶ 14.

On March 11, 2015, Defendants removed the suit to this Court, and shortly

thereafter, moved to dismiss the action for lack of personal jurisdiction, or alternatively,

to transfer venue to the Western District of Pennsylvania, where a related case is pending.

Dkt. No. 5.  On March 17, 2015, Plaintiff moved to remand the action to state court.  Dkt.

No. 7.  On March 30, 2015, Plaintiff filed its Amended Complaint, and one day later,

filed the instant Motion for Leave to Conduct Jurisdictional Discovery.  Dkt. No. 18.  In

its Motion for Leave to Conduct Jurisdictional Discovery, Plaintiff seeks to take Rule

30(b)(6) depositions of SDWM and Schneider Downs to develop evidence to support its

Response to Defendants' Rule 12(b)(2) Motion to Dismiss for Lack of Personal

Jurisdiction.

This Court agreed to stay the Response to the Motion to Dismiss and Alternative

Motion to Transfer Venue until it ruled on the Motion for Leave to Conduct Jurisdictional

Discovery.  Dkt. No. 21.  In the meantime, Defendants filed an Amended Notice of

Removal, Plaintiff's Motion to Remand has been fully briefed, and Defendants have filed

an Amended Motion to Dismiss and Alternative Motion to Transfer Venue.  Dkt. Nos.

22–24, 27.

## PLAINTIFF'S MOTION TO REMAND

### I.    Legal Standard for Motion to Remand

A district court is required to remand an action if, at any time, it appears that the

court lacks subject matter jurisdiction.  *Bell v. State Farm Lloyds,* No. 3:13–CV–1165–

M, 2014 WL 3058299, at *1 (N.D. Tex. July 7, 2014) (Lynn, J.).  The removing party has

the burden of establishing jurisdiction.  *Shearer v. Sw. Serv. v. Life Ins. Co.,* 516 F.3d

276, 278 (5th Cir. 2008).  To do so, the removing party must "distinctly and

affirmatively" allege jurisdictional facts.  *Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 397

(5th Cir. 2009).  In deciding whether remand is proper, a court is required to resolve

issues of material fact in the plaintiff's favor, and any doubts must be resolved against

removal. *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). However, a district court may rely on the pleadings, consider conflicting evidence, and resolve disputed jurisdictional facts. *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 291 (5th Cir. 1989).

Diversity jurisdiction exists when the parties are citizens of different states, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). No plaintiff can have the same citizenship as any defendant. *Lincoln Pro. Co. v. Roche*, 546 U.S. 81, 89 (2005). The citizenship of a limited partnership is determined by the citizenship of its partners. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079–81 (5th Cir. 2008). A natural person is a citizen of the place where he or she is domiciled, which is determined by examining two factors—the person's place of residence and his or her intent to remain there. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 798 (5th Cir. 2007) (citation omitted).

Evidence of a person's place of residence is prima facie proof of his domicile, and "[a] person's state of domicile presumptively continues unless rebutted with sufficient evidence of change." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011). However, domicile is determined from objective facts, and courts give scant weight to statements of intent that conflict with actual facts. *Cantor v. Wachovia Mortgage, FSB*, 641 F. Supp. 2d 602, 608 (N.D. Tex. 2009) (citations omitted). In ascertaining a party's domicile, a court addresses a variety of factors, none of which are dispositive, including where the party "exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts,

belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996).

## II.   Analysis of Motion to Remand

Plaintiff argues that Defendants' original Notice of Removal did not adequately plead or provide evidence to establish the citizenship of SDWM, a limited partnership.[1] Specifically, Plaintiff argues that Defendants failed to adequately plead the citizenship of the partners of SDWM.[2] Thus, because Defendants did not meet their burden of showing each partner of SDWM is not a citizen of Texas, Fiduciary argues remand is required.

Shortly after Plaintiff filed its Motion to Remand, Defendants filed a timely Amended Notice of Removal.[3] In the Amended Notice of Removal, Defendants explain that SDWM is a Pennsylvania limited partnership, and its partners are Schneider Downs Advisors II, LLC ("SDA II") and Schneider Downs Financial Advisors, LP ("SDFA").[4]

---

[1] Dkt. No. 7 at 1; Dkt. No. 1.

[2] Dkt. 7 at 1–2. Fiduciary argues that Defendants relied on inadmissible evidence in their effort to establish citizenship because the declaration they submitted from Defendant Buehler, Chairman of Schneider Downs, stating that "corporate records reflect that the individuals [upon whose citizenship SDWM's citizenship depends] . . . maintain permanent residences in the locations . . . in the States of Pennsylvania and Ohio," is hearsay because Defendants did not include copies of the corporate records in their original Notice of Removal. Dkt. No. 1-4 ¶¶ 7, 9; Dkt. No. 7 at 3. Furthermore, Buehler did not state when the records were last updated, nor did he address the factors necessary to determine the domicile of each of the 34 individuals whose citizenships are determinative. *Id.* at 2–3. Instead, Buehler's declaration merely provided the city of residence of each individual, without any statement about the person's intent to remain there. *Id.* at 3. Fiduciary does not dispute that these deficiencies have since been cured in Defendants' Amended Notice of Removal, but instead raises a new argument that an inconsistency between the original Notice of Removal and Amended Notice of Removal requires remand. *See* Dkt. No. 24.

[3] Dkt. No. 22 ¶ 2. The Amended Notice of Removal was timely because it was filed within 30 days of the date on which each Defendant was served with Plaintiff's Original Petition and Citation. *See* 28 U.S.C. § 1446(b).

[4] *Id.* ¶ 8 (citing Def. Ex. B ¶ 5 (Amended Decl. or Raymond W. Buehler, Jr.); Def. Ex. B-2.

SDA II is wholly owned by SDFA.[5]  SDFA is a Pennsylvania limited partnership, with

Schneider Downs Advisors, LLC ("SDA") as its general partner and 34 individuals as its

limited partners, each of whom has been domiciled in Pennsylvania and Ohio since

March 3, 2015, the date this suit was filed.[6]  The members of SDA are 33 individuals

who have also been domiciled in Pennsylvania and Ohio since March 3, 2015.[7]

Accordingly, in their Response to the Motion to Remand, Defendants argue that the

Amended Notice of Removal, and the declarations and evidence attached thereto,

conclusively establish that SDWM is a citizen of Pennsylvania and Ohio, and that

complete diversity exists in this case.[8]

        In its Reply, Plaintiff argues that Defendants have presented contradictory

evidence about the members of SDA because, with the original Notice of Removal,

Defendant Buehler stated in his declaration that Nancy Skeans was one of 34 members of

SDA; however, in the Amended Notice of Removal and Buehler's amended declaration,

he states that there are only 33 members of SDA, and Nancy Skeans is not among them.[9]

Fiduciary argues that this contradictory evidence shows Defendants have failed to meet

their burden of establishing diversity jurisdiction.[10]  Fiduciary acknowledges that Skeans

has provided a declaration in which she states that her permanent residence is in

---

[5] Def. Ex. B ¶ 6; Def. Ex. B-3.
[6] Dkt. No. 22 ¶¶ 8-10; Def. Ex. B ¶¶ 7-9, 12; Def. Ex. B-4, B-5.  Defendants provided declarations from 27 of the 34 individuals listed as limited partners in SDFA and/or members of SDA, each of whom states facts that establish the domicile of each in Pennsylvania ("Pennsylvania Declarations").  Def. Ex. D–E.  The other seven individuals provided declarations that establish their domicile in Ohio ("Ohio Declarations").  Def. Ex. E.
[7] Dkt. No. 22 ¶ 8-10; Def. Ex. B ¶¶ 8, 10-12; Def. Ex. B-6, B-7.
[8] Dkt. No. 23 at 2.
[9] Dkt. No. 24 at 2 (citing Dkt. No. 1-4 ¶ 9; Def. Ex. B ¶ 11; Def. Ex. B-7).
[10] Dkt. No. 24 at 2.

Pennsylvania, and that she intends to remain there, but Fiduciary argues that Skeans' declaration does not cure the unreliability of Defendants' filing.[11]  Thus, Fiduciary argues that it has created an issue of fact that this Court should resolve in favor of remand.  *Id.*

The issue is whether Defendants' Amended Notice of Removal, because it conflicts with, and not merely supplements, the original Notice of Removal, can create an issue of fact that requires remand, and if so, whether the issue of fact is of consequence to the subject matter jurisdiction inquiry.  Defendants were not required to seek leave to file their Amended Notice of Removal.  *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1165 (5th Cir. 1989).  An amended notice of removal is permitted to cure a defective or missing allegation regarding the citizenship of a party.  *D. J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.*, 608 F.2d 145, 146 (5th Cir. 1979).

Here, in their original Notice of Removal, Defendants did not adequately allege the citizenship of SDWM.  Plaintiff does not argue that the Amended Notice of Removal contains similarly inadequate jurisdictional allegations.  Rather, Plaintiff argues there is an issue of fact about the members of SDA, and specifically whether Nancy Skeans is a member.  This is not a fact of consequence in determining the citizenship of SDWM because Plaintiff has not provided any allegation or competent evidence that shows Skeans or any other member of SDA is domiciled in Texas, so as to defeat diversity.

If Skeans is, indeed, a member of SDA, as Plaintiff speculates, the evidence before the Court establishes that she is domiciled in Pennsylvania, not Texas.  Moreover, Plaintiff cannot create a fact issue based on differences between the original Notice of Removal and the Amended Notice of Removal.  The latter supplants the former, and to

---

[11] *Id.* at 3; Def. Ex. D (Dkt. No. 22-6 at 52–53) (Supp. Decl. of Nancy L. Skeans).

create a fact issue, Plaintiff must provide competent evidence that contradicts the allegations and evidence in Defendants' Amended Notice of Removal. Plaintiff has not done so; therefore, the Court finds that there is complete diversity between the parties, and Plaintiff's Motion to Remand is **DENIED**.

## PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY

### I.  Legal Standard for Jurisdictional Discovery

As the party opposing dismissal and requesting discovery, Plaintiff bears the burden of demonstrating the necessity of discovery. *See Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013). A district court has discretion to permit jurisdictional discovery. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). However, a plaintiff has the burden to make a "preliminary showing of jurisdiction" before being entitled to such discovery. *Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 429 (5th Cir. 2005). The preliminary showing of jurisdiction must include factual allegations that show with reasonable particularity the possible existence of the necessary continuous and systematic contacts. *See Fielding v. Hubert Burda Media, Inc.,* 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).

A plaintiff should "identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Evergreen Media Holdings, LLC v. Safran Co.*, No. CIV.A. H-14-1634, 2014 WL 7272292, at *3 (S.D. Tex. Dec. 18, 2014). "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should

not be permitted." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (citation omitted).

## II.    Analysis of Motion for Jurisdictional Discovery

The issue before the Court is whether Plaintiff has made a preliminary showing of jurisdiction, and if so, how Plaintiff's proposed Rule 30(b)(6) depositions would adduce facts that might support personal jurisdiction.  Plaintiff's arguments are only directed to the issue of general jurisdiction. Therefore, Defendants argue that Plaintiff has failed to make a preliminary showing of general jurisdiction, and any facts adduced from further discovery will not alter this Court's jurisdictional analysis.

### A.  Jurisdiction by Consent Through Registration

Plaintiff argues that this Court has personal jurisdiction over Schneider Downs based on its consent to jurisdiction in Texas, which was established when Schneider Downs filed with the Texas Secretary of State an Application for Registration of a Foreign Professional Corporation to do business in Texas, and designated a registered agent for service of process.  Dkt. No. 18 at 3 (citing *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n.21 (5th Cir. 1981); *Acacia Pipeline Corp. v. Champlin Exploration, Inc.*, 769 S.W.2d 719, 720 (Tex. App.—Houston [1st Dist.] 1989, no writ)).  Plaintiff acknowledges that a more recent decision from the Fifth Circuit suggests that merely designating a registered agent does not establish the necessary contacts for general jurisdiction.  *See Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) ("A registered agent, from any conceivable perspective, hardly amounts to the general business presence of a corporation so as to sustain an assertion of general jurisdiction.").

9

Nonetheless, Plaintiff argues that its theory of jurisdictional consent by way of designating a registered agent survives because in *Wenche Siemer* none of the parties were located in Texas, and the Fifth Circuit noted that no Texas court had yet held that registering to do business in Texas serves as a corporation's consent to general jurisdiction where the plaintiffs are non-residents and the defendant is not conducting substantial activity within Texas. *Id.*

Plaintiff asks this Court to infer that the Fifth Circuit, at the time *Wenche Siemer* was decided, was aware of *Acacia Pipeline*, where a state appellate court held that a foreign corporation's designation of a Texas registered agent constituted consent to be sued in Texas by a plaintiff located in Texas. *See Acacia Pipeline Corp.*, 769 S.W.2d at 720. Plaintiff argues that the Fifth Circuit's decisions in *Prejean* and *Wenche Siemer*, along with the decision in *Acacia Pipeline*, should be read as establishing that registration to do business in Texas operates as a consent to jurisdiction, at least when a Texas resident sues a Texas-registered foreign corporation. Dkt. No. 18 at 5. Plaintiff acknowledges that another court within the Northern District of Texas has differed with respect to Plaintiff's reading of *Wenche Siemer*. *See Dominion Gas Ventures, Inc. v. N.L.S., Inc.*, 889 F. Supp. 265, 268 (N.D. Tex. 1995) ("The mere act of registering an agent does not create a general business presence in Texas, nor does it act as consent to being hauled into a Texas court." (citing *Wenche Siemer*, 966 F.2d at 181)).

Defendants argue that *Wenche Siemer* establishes the Fifth Circuit's position that qualifying to do business in a forum is not afforded any special weight in a general jurisdiction analysis, and that if Plaintiff's reading of *Prejean* were correct, jurisdictional discovery would be unnecessary. Dkt. No. 25 at 3. Defendants further argue that recent

courts of appeal decisions have concluded that *Acacia Pipeline* was wrongly decided. *Id.* (citing *Waterman Steamship Corp. v. Ruiz*, 355 S.W.3d 387, 410 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Conner v. ContiCarriers & Terminals Inc.*, 944 S.W.2d 405, 416 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *see also* Dkt. No. 25 at 4 n.3 (citing Texas court of appeals decisions holding that registration to do business in Texas and/or having a registered an agent in Texas does not establish general jurisdiction).

Defendants reject Plaintiff's attempt to distinguish *Wenche Siemer* as involving a non-resident plaintiff, noting that the general jurisdiction analysis focuses exclusively on a defendant's contacts with the forum. *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). Defendants rely on *Wenche Siemer* to argue that Schneider Downs' registration to do business in Texas is of no import to the general jurisdictional analysis, and that no amount of jurisdictional discovery can change that proposition. *See Wenche Siemer*, 966 F.2d at 182; *see also CitiCapital Commercial Corp. v. First Nat'l Bank*, No. 3:04-CV-0302-B, 2005 U.S. Dist. LEXIS 6310, at *7 (N.D. Tex. Apr. 11, 2005); *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 891 (S.D. Tex. 1993).

The Court finds that the registration of an agent for process and registration to do business in Texas, without more, does not suffice to establish general jurisdiction. *See Wenche Siemer*, 966 F.2d at 182; *Johnston*, 523 F.3d at 614. Even if that proposition were viable, no jurisdictional discovery would be needed to prove general jurisdiction. The question is whether Plaintiff has made a preliminary showing of something else that, if proven through jurisdictional discovery, would establish general jurisdiction over Schneider Downs.

### B.  Jurisdiction by Registration Plus Contacts

Alternatively, Plaintiff argues that Schneider Downs' registration with the Texas Secretary of State *and* its Texas contacts give rise to general jurisdiction in Texas.

Plaintiff relies on *Leonard v. USA Petroleum Corp.*, in which the court acknowledged that a foreign corporation's registration with the Texas Secretary of State was a factor in a jurisdictional analysis, but found that more was necessary to establish purposeful availment of the protections of Texas.  829 F. Supp. 882 (S.D. Tex. 1993). Plaintiff refers to this holding as establishing the "registration plus" theory of personal jurisdiction, *i.e.,* consent *and* contacts.  Dkt. No. 29 at 2–3.

The Court finds that *Leonard* does not establish the proposition suggested by Plaintiff.  In effect, Plaintiff asks this Court to give Schneider Downs' registration with Texas undue weight in the general jurisdictional analysis when the Fifth Circuit has made it clear that the appointment of an agent for service of process and the application to do business are afforded no special weight, and the exercise of general jurisdiction must comport with the usual principles of due process.  *See Wenche Siemer*, 966 F.2d at 183. In *Ratliff v. Cooper Laboratories, Inc.*, which was favorably discussed by the Fifth Circuit in *Wenche Siemer*, the Fourth Circuit held that registration to do business and the appointment of a registered agent were afforded no special weight where a non-resident defendant had no offices, warehouses, real or personal property, bank accounts, or advertisements in the state.  444 F.2d 745, 748 (4th Cir. 1971).  The *Ratliff* court held personal jurisdiction was not established over a non-resident defendant despite the fact that five men who lived in the State promoted the defendant's products through personal contacts with doctors and drugstores located throughout the state.  *Id.* at 746.

12

The Court concludes that Plaintiff's "registration plus" theory is just a theory, and Plaintiff must establish general jurisdiction under the usual due process analysis. *See Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851, 180 L.Ed.2d 796 (2011); *Daimler AG v. Bauman*, 134 S. Ct. 746, 760, 187 L.Ed.2d 624 (2014); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–19 (1984).

For a corporation, the place in which the corporation is "fairly regarded at home," *i.e.* its place of incorporation and/or its principal place of business" is considered the archetypical forum for general jurisdiction. *Goodyear*, 131 S. Ct. at 2851; *Daimler AG*, 134 S. Ct. at 760. "A corporation's continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Goodyear*, 131 S. Ct. at 2856 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). The question is whether a corporation's affiliations with the forum "are so 'continuous and systematic' as to render [the corporation] essentially at home in the forum State.'" *Daimler AG*, 134 S. Ct. at 761.

Although Defendants ask this Court to begin with the proposition that general jurisdiction is not easily established, here, Plaintiff need only make a preliminary showing of jurisdiction by alleging facts with reasonable particularity that show Schneider Downs has the necessary systematic and continuous affiliations with Texas that would support general jurisdiction. Defendant Buehler has admitted that Schneider Downs has performed "isolated" work for Texas clients for the last six years that averaged less than 1% of Schneider Downs' annual revenue. *See* Dkt. No. 6-1 ¶ 13. However, Plaintiff is seeking to discover the actual revenue Schneider Downs receives from Texas, rather than the six year average revenue. Dkt. No. 18 at 9. Plaintiff is also

13

seeking more information about Schneider Downs' efforts to expand its business in Texas, particularly through its website.  *See* Dkt. No. 19 (Pl. App. 6-9).  Plaintiff submits that these inquiries will lead to facts that support general jurisdiction.  Dkt. No. 6-1 at 7.

Defendants respond that even if Schneider Downs derives a substantial portion of its revenues from business in Texas, those revenues must be derived from activities by Schneider Downs in Texas.  *See Johnston*, 523 F.3d at 611; *Cyper v. Broussard Bros.*, *Inc.*, No. 3:13-CV-00050, 2013 U.S. Dist. LEXIS 96061, at *6–7 (S.D. Tex. July 9, 2013); *see also* Dkt. No. 25 at 7 n.6.  Thus, Defendants contend that regardless of the revenues Schneider Downs derives from Texas clients, it is an insubstantial amount of its business that is performed in Texas.  *Id.* at 7.

Further, in response to Plaintiff's critique of Defendant Buehler's vague declaration regarding Schneider Downs' business in Texas, Defendants have submitted Buehler's Supplemental Declaration, which states that Schneider Downs' annual revenues over the past six years from work performed in Texas have averaged approximately 0.15% of Schneider Downs' overall annual revenues.  Supp. Decl. of Raymond W. Buehler ¶¶ 4–8, Dkt. No. 26 (Def. App. 2–3); *id.* at Ex. 1 (showing 0.13% average annual revenues over past seven years) (Def. App. 7).  Moreover, the average hours worked in Texas by Schneider Downs employees accounted on average for only 0.08% of hours firm-wide over the past seven years.  *Id.*  Consequently, Defendants argue that further discovery on revenue and hours is unwarranted.  Dkt. No. 25 at 8.

Defendants also argue that Schneider Downs' website posting on the Texas business margin tax does not support a finding of general jurisdiction because it was the only one of 300 postings since January 2012 that addressed a specific Texas tax issue.

14

Supp. Decl. of Raymond W. Buehler ¶ 10, Dkt. No. 26, Def. App. 3. Moreover, Defendants contend that Schneider Downs offers tax advice to clients in all fifty states, and as part of that service, it periodically posts updates on recent tax issues in different states and countries. *Id.* Defendants also contest Plaintiff's assertion that the website is interactive because it provides an e-mail hyperlink. *See McFadin v. Gerber*, 587 F.3d 753, 762 (5th Cir. 2009); *Mink v. AAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Defendants characterize the website as passive. *Id.* Alternatively, Defendants argue that an interactive website only shows that a firm is doing business with Texas, not necessarily in Texas. *See Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). Defendants state that Schneider downs does not advertise or solicit clients in Texas. Supp. Decl. of Raymond W. Buehler ¶ 10, Dkt. No. 26, Def. App. 3.

The Court has reviewed the declarations submitted by Defendants, and finds that the declarations create a very narrow path for Plaintiff to establish general jurisdiction. Whether Plaintiff can navigate that path is uncertain, but this has only an indirect bearing on the propriety of jurisdictional discovery. Personal jurisdiction is not reducible to a mathematical formula by which a certain amount of revenue and hours spent in a particular state foreclose or establish general jurisdiction as a matter of law; rather, "the issue of whether personal jurisdiction can be constitutionally exercised over a defendant" requires courts to look to the "nature and quality of commercial activity" that an entity conducts, through both traditional means and over the Internet. *Mink*, 190 F.3d at 336; *see also Helicopteros*, 466 U.S. at 415–16.

Plaintiff has made a preliminary showing regarding the nature and quality of Schneider Downs' commercial activity in Texas, so the Court will permit Plaintiff to

conduct a Rule 30(b)(6) deposition limited to the quality and nature of Schneider Downs'

contacts with Texas, including, but not limited to, the type of work it performs for Texas

clients, whether that work is performed in Texas or elsewhere, and the role Schneider

Downs' website plays in its relationship with its Texas customers.

### C.  Alter Ego Theory of Personal Jurisdiction over SDWM

Federal courts acknowledge "it is compatible with due process for a court to

exercise personal jurisdiction over an individual or a corporation that would not

ordinarily be subject to personal jurisdiction in that court when the individual or

corporation is an alter ego or successor of a corporation that would be subject to personal

jurisdiction in that court."  *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653

(5th Cir. 2002).  The rationale for exercising jurisdiction is that "the parent corporation

exerts such domination and control over its subsidiary 'that they do not in reality

constitute separate and distinct corporate entities but are one and the same corporation for

purposes of jurisdiction.'"  *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789,

798 (Tex. 2002) (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th

Cir.1983)).  Texas law presumes that two separate corporations are distinct entities.  *Id.*

(quoting *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 339 (Tex. 1968)).

"To 'fuse' the parent company and its subsidiary for jurisdictional purposes, the plaintiffs

must prove the parent controls the internal business operations and affairs of the

subsidiary."  *Id.* at 799.  However, "the degree of control the parent exercises must be

greater than that normally associated with common ownership and directorship; the

evidence must show that the two entities cease to be separate so that the corporate fiction

should be disregarded to prevent fraud or injustice." *Id.* (citing *Hargrave*, 710 F.2d at 1160).

The Court must weigh certain factors to determine whether Schneider Downs controls the internal business operations and affairs of SDWM to a degree greater than that normally associated with common ownership and directorship, *i.e.*, to overcome the presumption of corporate separateness: "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 346 (5th Cir. 2004).

Plaintiff contends that it has made a preliminary showing of jurisdiction over SDWM under an alter-ego theory, *i.e.*, SDWM's relationship with Schneider Downs makes it such that the establishment of personal jurisdiction over the latter gives the Court jurisdiction over the former.  Dkt. No. 18 at 7 (citing *Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 422–23 (5th Cir. 2014).  Plaintiff argues that the declarations submitted by Schneider Downs' Chairman, Defendant Buehler, and SDWM's Managing Director of the Financial Services Group, Nancy Skean, show (1) the shareholders of Schneider Downs established SDWM; and (2) the partners and members of SDWM subsidiaries, Schneider Downs Financial Advisors, LP and Schneider Downs Advisors, LLC are the same and include Defendant Buehler.  *See* Pl. App. 30 ¶¶ 3, 8; Dkt. No. 1-4 at Ex. B-5, B-7.  Plaintiff thus seeks to discover the management, leadership, policies and profit sharing of Schneider Downs and SDWM.

Plaintiff acknowledges Nancy Skean's declaration that SDWM makes its own hiring and employment decisions, and Buehler's similar claim that Schneider Downs does not take an active part in SDWM's business operations.  Dkt. No. 1-4 ¶ 8; Dkt. No. 6-1 ¶ 15.  However, Plaintiff notes that Buehler assisted in negotiating Eichelberger's employment with SDWM, which is at the core of this suit.  Dkt. No. 6-1 ¶ 18.  Indeed, Buehler sent a letter on SDWM letterhead informing Gibson of SDWM's recruitment of Eichelberger and SDWM's preemptive actions to restrict Eichelberger's employment. Dkt. No. 6-2 (Pl. App. 69-72).  Accordingly, Plaintiff seeks to discover facts about whether the finances of SDWM and Schneider Downs are distinct, the separateness of their operations and management, whether they file separate tax returns, their respective ownership, any shared employees, officers, and directors, the separateness of books and accounts, the policymaking process, and the separateness of business governance meetings.  Dkt. No. 18 at 9.

Defendants respond that Plaintiff cannot allege enough facts to support even an inference that SDWM would be subject to jurisdiction in Texas under an alter ego theory. First, Defendants note that Plaintiff is seeking to establish personal jurisdiction over the controlled company, rather than the controlling company, and Plaintiff has provided no authority by which the alter ego doctrine was applied to impute business presence in Texas of a controlling entity to a related, controlled entity that lacked Texas contacts.[12]

_____

[12] Plaintiff counters that *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, cited by Defendants, discusses this very concept that Defendants find novel and unsupported— alter ego jurisdiction over a subsidiary based on the contacts of the parent. 235 S.W.3d 163, 175–76 (Tex. 2007).  In that case, the Supreme Court of Texas held that the court of appeals erred by imputing the parent's contacts to the subsidiary because it found the parent and subsidiary were not a "single business enterprise." *Id.* at 175–76.  The U.S. Supreme Court has implicitly sanctioned imputing contacts from a parent to a subsidiary.

Dkt. No. 25 at 11. Even if this were permissible, Defendants argue, the mere overlap between shareholders of Schneider Downs and partners of SDWM does not show the relationship between the entities. Schneider Downs has no ownership interest in SDWM and is not its direct or indirect parent. Buehler Supp. Dec. ¶ 15, Dkt. No. 6-1; Skeans Decl. ¶ 8.

Defendants contend that the declarations of Buehler and Skeans clearly establish that Schneider Downs does not exercise dominion and control over SDWM. *See* Dkt. No. 25 at 12–13. As for the letter Defendant Buehler sent on behalf of SDWM to Gibson, Defendants contend that was a unique circumstance prompted by Buehler's familiarity with Roger Gibson, and he declares he does not ordinarily take part in SDWM's recruitment and hiring decisions. Supp. Buehler Decl. ¶¶ 19–20; Supp. Skeans Decl. ¶ 13 (Def. App. 5, 10). Buehler contends that nobody at Schneider Downs, including himself, took part in the decision to hire Eichelberger. Supp. Buehler Decl. ¶ 21; Supp. Skeans Decl. ¶ 13 (Def. App. 5, 10).

Plaintiff points out the inconsistencies in Buehler's and Skeans' various declarations. *Compare* Supp. Buehler Decl. ¶ 15 (Def. App. 4) ("Schneider Downs maintains its own financial records, separate and apart from those of [SDWM].") *and* Supp. Skeans Decl. ¶ 4 (Def. App. 8) ("[SDWM] maintains its own books and records related to all partnership affairs, separate and apart from the corporate records of Schneider Downs") *with* Buehler Decl. ¶ 3, Dkt. No. 22-4 ("As Chairman of Schneider Downs, I am a custodian of the corporate records of Schneider Downs and its related

---

*See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13 (1984) (explaining that "jurisdiction over a parent corporation [does not] automatically establish jurisdiction over a wholly owned subsidiary").

entities, including but not limited to [SDWM], SDFA, SDA, and SDA II" and those records are "kept in the regular course of business at Schneider Downs."). Plaintiff also notes that Skeans stated that two SDWM partners, Don Linzer and Karl Kunkle, are actively involved in the management of SDWM, and both appear to be shareholders of Schneider Downs. Dkt. No. 26 (Pl. App. 9); Dkt. No. 30 (Pl. App. 10–15).

The Court is satisfied that the factor-based test for alter ego jurisdiction is, in its very nature, a fact-intensive inquiry, requiring this Court to carefully weigh the various areas of overlap between the disputed entities. The Court is not satisfied that the foregoing declarations of Buehler and Skeans conclusively foreclose an alter ego theory, should Plaintiff establish that this Court has general jurisdiction over Schneider Downs. Plaintiff has made a preliminary showing of overlap between the entities, and there is at least a fact issue with respect to Buehler's actions on SDWM's behalf. Accordingly, this Court will permit Plaintiff to conduct a Rule 30(b)(6) deposition limited to the issue raised in Nos. 1–10 of page 9 of Plaintiff's Motion for Jurisdictional Discovery.

## CONCLUSION

Plaintiff's Motion to Remand is **DENIED**, and Plaintiff's Motion for Jurisdictional Discovery is **GRANTED** to the extent discussed herein.

Defendants requests that the corporate representative depositions sought by Plaintiff be restricted to the jurisdictional issues raised and that they be limited to one hour each. Dkt. No. 25 at 15. The Court finds these restrictions are reasonable, and **ORDERS** that the Rule 30(b)(6) depositions of SDWM and Schneider Downs be no more than one hour each and limited to the jurisdictional issues raised in the parties' briefing and this Memorandum Opinion and Order.

Plaintiff shall promptly notify the Court upon completion of the depositions, after which Plaintiff will have 14 days to respond to Defendants' Amended Motion to Dismiss for Lack of Personal Jurisdiction and Alternative Motion to Transfer Venue [Dkt. No. 27].

**SO ORDERED.**

May 8, 2015.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**